**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
CALVERTON HILLS HOMEOWNERS
ASSOCIATION, INC., and NEUER INC.

                Plaintiffs,

           -against-

NUGENT BUILDING CORP., COUNTY OF
SUFFOLK, SUFFOLK COUNTY
DEPARTMENT OF HEALTH SERVICES,
SUFFOLK COUNTY SEWER AGENCY,
SUFFOLK COUNTY DEPARTMENT OF
PUBLIC WORKS, DIVISION OF
ENVIORNMENTAL QUALITY OFFICE OF
WASTE WATER MANAGEMENT, and
SEWER DEPARTMENT OF
ENVIORNMENTAL CONTROL,

                Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-03916 (ADS)(GRB)

**FILED**
**CLERK**

12/26/2017 11:15 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

## APPEARANCES:

**Scheyer & Jellenik**
*Co-Counsel for the Plaintiffs*
110 Lake Avenue So., Suite 46
Nesconset, NY 11767
      By:    Richard I. Scheyer, Esq., Of Counsel

**Fredrick P. Stern P.C.**
*Co-Counsel for the Plaintiffs*
110 Lake Avenue So., Suite 46
Nesconset, NY 11767
      By:    Fredrick P. Stern, Esq., Of Counsel

**Suffolk County Department of Law**
*Counsel for the Defendants*
100 Veterans Memorial Highway
Hauppauge, NY 11788
      By:    Leonard G. Kapsalis, Esq., Of Counsel

1

**SPATT, District Judge**:

Currently before the Court is a decades-old dispute between the Plaintiffs, Calverton Hills Homeowners Association, Inc. (the "Association") and Neuer Inc. ("Neuer") (together, the "Plaintiffs") and the Defendants, Nugent Building Corp. ("Nugent"), the County of Suffolk (the "County"), the Suffolk County Department of Health Services ("DHS"), and other associated government agencies (together, the "Defendants") over the ownership and maintenance of the sewage treatment plant which services the Calverton Hills residential development in Calverton, New York.

On June 30, 2016, the Plaintiffs commenced this action by filing a complaint that alleges eight causes of actions against the Defendants, namely, violations of 42 U.S.C. § 1983 for deprivation of rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution as well as pendent state law claims. The Plaintiffs are seeking monetary damages as well as equitable relief in the form of a preliminary and permanent injunction declaring the County as owner of the sewage treatment plant, and requiring the County to operate, maintain or replace the above-mentioned plant.

On October 6, 2017, the Defendants filed a motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(1), and Rule 12(b)(6). The following day, the Plaintiffs filed a motion for a preliminary injunction seeking to declare the County as owner of the plant and to require the County to operate, maintain or replace the plant. The Court ordered and received additional briefings on both motions. Both motions were fully briefed on December 6, 2017.

On December 8, 2017, the Court heard oral argument on both motions.

For the reasons set forth below, the Court denies the Plaintiffs' motion for a preliminary injunction and grants the Defendants' motion to dismiss, pursuant to Rule 12(b)(1) and 12(b)(6). Further, the Court declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims.

## I. BACKGROUND

In 1973, Nugent proposed to develop a parcel of property it owned located in Calverton, Town of Brookhaven, County of Suffolk, State of New York. The proposal called for the construction of approximately 236 individually owned townhouses and a common area of approximately 34 acres. Complaint ¶ 12.

In order to facilitate the construction of the townhouses, the Town of Brookhaven (the "Town") approved a change of the zoning on the property to MF-1. *Id*. ¶ 13. This approval was contingent on the construction of a sewage treatment plant on the property. *Id*. ¶ 14.

On April 12, 1973, the County, the Town, DHS and Nugent entered into an agreement (the "1973 Agreement"). It was recorded in the Suffolk County Clerk's Office on September 7, 1973 in the books of Deeds and Conveyances at Liber 7483, page 312. *Id*. ¶ 15.

In part, the document reads:

1. Where the term "OWNER" is used herein, it shall be deemed to mean the owner of all or part of a particular section of the plot, whether it be the CORPORATION or another …

9. The responsibility for maintenance and operation of all on-site plumbing lines and sewer laterals be the obligation of the Owner until the same are turned over to the Association and shall thereafter be the responsibility of the Association.

19. It is understood and agreed that upon completion of the treatment plant in accordance with the approved plans and specifications therefor, [NUGENT] shall execute and deliver to the AGENCY such deed and other instruments necessary to vest in the AGENCY or its nominee good marketable and insurable title to the treatment plant site together with the treatment plant and appurtenances to be erected thereon, and together with an easement in perpetuity for purposes of ingress

> and egress to and from the said sewage treatment plant and site, and to operate and maintain the said sewage treatment plant and site … The AGENCY or its nominee shall accept such deeds and other instruments, and shall thereafter assume responsibility for the ownership, maintenance and operation of the said sewage treatment plant, site and easement, and shall levy or assess charges therefor in accordance with the law … Until such time as the AGENCY or its nominee shall accept ownership, operation and maintenance of the sewage treatment plant and site, as hereinabove provided, OWNER, shall have the obligation to properly maintain and operate said sewage treatment plant … The area designated as the plant site shall be marked specifically "area to be dedicated to the Suffolk County Sewer Agency or its municipal nominee…"

*Id.* ¶ 16.  Under the terms of the 1973 Agreement, Nugent was responsible for the construction of the sewage treatment plant.  *Id.*

All 236 townhouses were built and certificates of occupancy were issued by 1980. However, in January of 1980, Nugent was dissolved for failure to pay franchise taxes.  In March of 1987, title to the common elements of the property reverted to the County as a result of Nugent's non-payment of real estate taxes.  In 1990, the County deeded the common elements to the Association by unrecorded deed.  According to the Complaint, title to the sewage treatment plant remains with Nugent to this date.  *Id.* ¶¶ 18-23.

From 1973 to the present, the Association has operated and maintained the sewage treatment plant.  *Id.* ¶ 24.  In 2007, DHS alerted the Association that the sewage treatment plant was not being operated in compliance with the discharge monitoring requirements of Article 7, Section 713 of the Suffolk County Sanitary Code.  At that time, DHS began enforcement proceedings against the Association stemming from the failure to comply with the above-mentioned provision of the Suffolk County Sanitary Code.  *Id.* ¶ 31.

On March 7, 2008, the Association entered into a Consent Order with DHS (the "2008 Agreement"), which provided, in pertinent part, the following:

2. submit, in approvable form, a report, prepared by an engineer...detailing the requirements necessary to bring Respondent's above referenced sewage treatment facility into compliance with SPDES Permit";

3. submit, in approvable form, plans and specifications prepared by an Engineer...detailing the requirements necessary to bring Respondent 's above referenced sewage treatment plant into compliance with the SPDES Permit" (which the SPDES had consented to increase to permit limits of 45 mg/I BOD and 45 mg/I SS upon signing of the DHS Order);

4. By three (3) months after the approval of the engineering report, [Association] shall complete all required plan modifications that were developed tor item 3 above;

5. By August 1, 2008, [Association] shall submit, in approvable form, prepared by an engineer...detailing the requirements necessary for the construction of a new sewage treatment plant that will meet or exceed the current nitrogen removal limits and the Suffolk County Sanitary Code;

6. By three 3 months after the approval of the engineering report, [Association] shall submit, in approvable form, plans and specifications, prepared by an engineer...for the construction of a new sewage treatment plant;

7. By three (3) months after the approval of the plans and specifications referred to in item 6 above, [Association] shall commence construction in accordance with the approved engineering report, plans and specifications referred to in Terms and Condition 5 and 6 above;

8. By sixteen (16) months after the commencement of construction, [Association] shall complete the construction referred to in Term and Condition 7 above;

9. By 3 months after completion of construction, [Association] shall submit, in approvable form, an Operations and Maintenance (O&M) Manual, prepared by an engineer...for the upgraded facility;

10. By 3 months after the completion of construction,

[Association] shall complete all on line debugging and shall operate the upgraded facility in accordance with [Association's] SPDES permit effluent limitations and approved engineering report, plans and specifications, and operations and maintenance manual;

12. Respondent agrees that in the event that Respondent fails to meet any terms of conditions of this Order on Consent, the Department shall be entitled to payment by [Association] of a stipulated penalty to be calculated in accordance with..." a penalty schedule."

*Id.* ¶ 35.  According to the 2008 Agreement, if the Association fails to comply, it may be subjected to significant fines.  *Id.* ¶ 39.  The Association alleges that it was under duress at the time of the 2008 Agreement and was coerced into signing it.  *Id.* ¶ 40.  It further asserts that the Suffolk County Legislature never held a public hearing and failed to pass a resolution adopting the 2008 Agreement.  *Id.* ¶¶ 66-67.

On March 7, 2016, the County issued a letter to the Association, stating that the Association was in breach of the agreement by failing to begin construction of a new sewage treatment facility within three months of the approval of the plans and specifications, as specified in the 2008 Agreement.  According to the 2008 Agreement, the County had the right to collect a monetary penalty of $293,500 for such a breach.  However, the County offered to collect a monetary penalty of $2,000 to satisfy the violation.  Declaration of Frederick P. Stern ("Stern Declaration"), Docket Entry ("DE") 11, Exhibit E.

On June 30, 2016, the Plaintiffs commenced this action in this Court seeking monetary damages as well as equitable relief in the form of a preliminary and permanent injunction declaring the County as owner of the sewage treatment plant,  and requiring the County to operate, maintain or replace the above-mentioned plant.  *See* Stern Declaration, DE 11, Exhibit A.

On or about June 26, 2017, the Association received a Notice of Formal Hearing from DHS directing them to appear on July 28, 2017 at 10:00 a.m. to respond to two violations: (1) Article 5, Section 760-705B; and (2) Article 5, Section 760-713E.  *See* Stern Declaration, DE 11, Exhibit F.

As mentioned previously, the Defendants filed the instant motion to dismiss on October 6, 2017 and the Plaintiffs filed their motion for a preliminary injunction on October 17, 2017.  The Defendants maintain that under Rule 12(b)(1), this case lacks subject-matter jurisdiction to be heard presently in federal court and that the Plaintiffs fail to state a claim.  The Plaintiffs request

that the Court "enjoin the County and its' administrative agencies from enforcement proceedings pursuant to the 2008 Agreement and direct them to install the six leeching pools to the west side of the leeching field pursuant to [Rule] 65(a)." DE 12 at 10.

## II. DISCUSSION

"The District Court may grant a preliminary injunction if the moving party establishes '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Christian Louboutin S.A. v. Yves Saint Lauren Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (quoting *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011)).

The Plaintiffs assert that preliminary relief is justified because (1) they are likely to succeed on its takings claim, their Substantive Due Process Claim and their Equal Protection Claim; (2) irreparable harm is presumed because there is a declaration of constitutional rights; (3) the equities in this case tip in the Plaintiffs' favor; and (4) it is in the public interest that the County remedy the sewage treatment plant.

The Defendants reply that such relief is not warranted because this Court lacks subject matter jurisdiction over the Plaintiffs' claims; (2) the Plaintiffs' claims are time-barred; (3) the Plaintiffs' state law claims are barred by the Plaintiffs' failure to timely serve a notice of claim; (4) supplemental jurisdiction over the state law claims should be declined; (5) success on the merits and irreparable harm have not been established; and (6) the balance of equities favors the County.

As detailed below, the Court finds that the Plaintiffs have not established that this Court has subject matter jurisdiction over three of the four federal causes of action. Further, this Court finds that the Plaintiffs' have failed to state a claim on the final federal cause of action and declines

to exercise supplemental jurisdiction over the state law claims. Accordingly, the Court declines to reach the parties' contentions with respect to the merits of the Plaintiffs' preliminary injunction.

## A. SUBJECT MATTER JURISDICTION

The Court will first turn to the Rule 12(b)(1) challenge to the Plaintiffs' complaint as the lack of subject matter jurisdiction would potentially obviate the need to address the remainder of the Defendants' challenges. *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (internal citations omitted); *Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946) (noting that subject matter jurisdiction must first be determined before the Court determines a motion to dismiss for failure to state a claim).

"'Federal courts are courts of limited jurisdiction,' possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A. R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (holding that an action may be dismissed under Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it" (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))). "A motion for a preliminary injunction under Rule 65(a) … does not confer subject matter jurisdiction on the court." *Jones v. Cawley*, No. 10-cv-712, 2010 WL 2545738, at *1 (N.D.N.Y. June 21, 2010) (citing *Citizens Concerned for Separation of Church and State v. City and Cty. of Denver*, 628 F.2d 1289, 1298-99 (10th Cir. 1980)); *see, e.g.*, *Hamblet v. Brownlee*, 319 F. Supp. 2d 422, 430 (S.D.N.Y. 2004); *Chiania v. Broadmoor Assocs.,* No. 94-cv-0613, 1994 WL 30412, at *2 (S.D.N.Y. Feb. 2, 1994).

Therefore, in order for the Court to grant preliminary relief, "an independent basis for asserting federal question or diversity jurisdiction must be shown." 11A *Fed. Prac. & Proc. Civ.*

§ 2941 (3d ed.); *see also Park Place Entm't Corp. v. Arquette*, 113 F. Supp. 2d 322, 323 (N.D.N.Y. 2000) ("Before reaching the merits of Plaintiffs' motion for a preliminary injunction the Court will consider whether it has subject matter jurisdiction to hear Plaintiffs' claims.").

"Where a challenge to jurisdiction is interposed on an application for a preliminary injunction '[t]he plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'" *Savoie v. Merchs. Bank*, 84 F.3d 52, 57 (2d Cir. 1996) (quoting *Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 59 (2d Cir. 1981)).

### 1. Legal Standard

Rule 12(b)(1) requires dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). When a defendant brings a motion to dismiss for lack of subject-matter jurisdiction, it is the plaintiff's burden to establish the existence of subject-matter jurisdiction by a preponderance of the evidence. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010) (citing *Makarova*, 201 F.3d at 113); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113; *see also Aurecchione*, 426 F.3d at 638 ("After construing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." (internal citations and quotation marks omitted)). "Under FED R. CIV. P. 12(b)(1), '[even] a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis

for jurisdiction is not sufficient.'" *Frisone v. Pepsico Inc.*, 369 F. Supp. 2d 464, 469 (S.D.N.Y. 2005) (quoting *Peterson v. Cont'l Airlines Inc.*, 970 F. Supp. 246, 249 (S.D.N.Y. 1997)).

In its assessment of whether it has subject-matter jurisdiction, the Court "need not accept as true contested jurisdictional allegations and may resolve disputed jurisdictional facts by reference to affidavits and other matters outside the pleadings." *Williams v. Runyon*, No. 97-civ.-4029, 1997 WL 77207, at *1 (S.D.N.Y. Feb. 17, 1999) (internal citations omitted); *accord N.Y.S. Catholic Health Plan, Inc. v. Acad. O&P Assoc.*, 312 F.R.D. 278, 294 (E.D.N.Y. 2015) (citing *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002)); *Makarova*, 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

Federal question jurisdiction is present when "it is clear from the face of the complaint that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *New York v. Shinecock Indian Nation*, 701 F.3d 101, 106 (2d Cir. 2012) (quoting *Franchise Tax Bd. Of State of Cal. V. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)); *see also* 28 U.S.C. § 1331.

## 2. Ripeness

The Plaintiffs essentially plead three federal claims in their complaint under § 1983: (1) the Defendants actions allegedly effected an unconstitutional taking of the Plaintiffs' property without just compensation; (2) the Defendants allegedly denied the Plaintiffs' right to equal protection of the laws; and (3) the Defendants allegedly denied the Plaintiffs' right to substantive due process. Although the Plaintiffs also ambiguously reference a Fourth Amendment claim, this alleged claim is addressed in Section II.B.2. As further explained below, each of these three claims is subject to the same ripeness standard that is applied to land use regulation challenges.

*Herrington v. County of Sonoma*, 857 F.2d 567, 569 & n.1 (9th Cir. 1988), *modifying* 834 F.2d

1488 (9th Cir. 1987), *cert. denied*, 489 U.S. 1090, 109 S. Ct. 1557, 103 L. Ed. 2d 860 (1989).

Ripeness is a jurisdictional inquiry that prevents the Court from prematurely adjudicating

untimely disagreements.  *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08,

123 S. Ct. 2026, 2030, 155 L. Ed. 2d 1017 (2003) ("Ripeness is a justiciability doctrine designed

'to prevent the courts, through avoidance of premature adjudication, from entangling themselves

in abstract disagreements over administrative policies, and also to protect agencies from judicial

interference until an administrative decision has been formalized and its effects felt in a concrete

way by the challenging parties.'" (quoting *Abbot Labs v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct.

1507, 18 L. Ed. 2d 681 (1967))); *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 110 (2d Cir.

2009); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 247 (2d Cir. 2005); *New York Pub.

Interest Research Grp. v. Whitman*, 321 F.3d 316, 326 (2d Cir. 2003); *Kittay v. Giuliani*, 112 F.

Supp. 2d 342, 348 (S.D.N.Y. 2000) (holding that under Article III, in order for claims to be

justiciable, "courts have long recognized that the controversy, as an initial matter, must be ripe"

(citing *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999)), *aff'd*, 252 F.3d 645

(2d Cir. 2001).  It is a "constitutional prerequisite to the exercise of jurisdiction" by this Court.

*Nutritional Health All. v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998).  The Court "must presume

that [it] cannot entertain [a plaintiff's] claims 'unless the contrary appears affirmatively from the

record.'"  *Murphy*, 402 F.3d at 347 (quoting *Renne v. Geary*, 501 U.S. 312, 316, 111 S. Ct. 2331,

115 L. Ed. 2d 288 (1991)).

In order to establish that a land use claim is ripe, the Supreme Court established the two-

prong *Williamson* test.  *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson

City*, 473 U.S. 172, 186, 194 (1985); *Kowalczyk v. Barbarite*, 594 F. App'x 690, 691 (2d Cir. 2014)

("In *Williamson*, the Supreme Court articulated a two-prong ripeness test applicable to Takings Clause claims arising from local land-use disputes."); *Murphy*, 402 F.3d at 350 ("The *Williamson County* ripeness test is a fact-sensitive inquiry that may, when circumstances warrant, be applicable to various types of land use challenges."). "First, the local regulatory body must render a 'final decision' on the matter. Second, a plaintiff is required to seek compensation through an available state procedure before bringing suit in federal court." *Kowalczyk*, 594 F. App'x at 692-93; *accord Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 77 (E.D.N.Y. 2016) ("In *Williamson*, the Supreme Court held that a takings dispute is not ripe unless (1) the state regulatory entity has rendered a 'final decision regarding the application of the regulations to the property at issue,' and (2) the plaintiff has sought compensation by means of available state proceedings." (citing *Williamson*, 472 U.S. at 186, 194)).

In *Murphy*, the Second Circuit explained the rationale for the "final decision" requirement in the first prong of the *Williamson* test:

> First ... the *Williamson County* Court reasoned that requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record.... Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel.... Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the longstanding principle that disputes should be decided on nonconstitutional grounds whenever possible.... Finally, since *Williamson County*, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

402 F.3d at 348–49 (internal citations omitted). Regarding the second prong, Justice Blackmun explained:

> A second reason the taking claim is not yet ripe is that respondent did not seek compensation through the procedures the State has provided for doing so. The Fifth

Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking.... [I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

*Williamson*, 473 U.S. at 194-95 (internal citations and quotation marks omitted).

In *Williamson*, the Court ultimately determined that "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation[.] … [T]he State's action here is not 'complete' until the State fails to provide adequate compensation for the taking." *Id*. at 195; *Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 512-13 (2d Cir. 2014) ("[A] property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State." (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995))), *cert. denied*, 135 S. Ct. 1156 (2015).

To determine if a decision is a "final decision," "a court must determine whether a plaintiff has pursued all local administrative remedies available to him or her." *Javino v. New York State Dep't of Envtl. Conservation*, No. 07-cv-0574, 2013 WL 1946211, at *4 (E.D.N.Y. May 10, 2013) (citing *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000)). Only if pursuing such administrative remedies would be futile is such a failure excusable. *Murphy*, 402 F.3d at 349. If an agency's appellate body "lacks discretion to grant variances, … has dug in its heels and made clear that all such applications will be denied, … [or] if it sits purely as a remedial body[,]" then an appeal is futile. *Id*. (internal citations omitted). A "purely remedial body" is one that may only

review a rejection; it cannot participate in the decision-making. *Id.* (quoting *Williamson*, 473 U.S. at 193).

The *Williamson* test is not a jurisdictional test. Thus, the Court "may determine that in some instances, the rule should not apply and [the Court] still ha[s] the power to decide the case." *Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014) (internal citations omitted). This determination is primarily based on a common-sense inquiry into whether additional actions are essential to define the scope of the constitutional injuries from the Plaintiffs' claims.

### a. Takings Claim

The Plaintiffs allege that the Defendants actions violate the Takings Clause of the Fifth Amendment to the United States Constitution. *See* Stern Declaration, DE 11, Exhibit A. The Defendants claim that the Plaintiffs' takings claim is not yet ripe for adjudication. The Court finds that the Plaintiffs' claim fail to satisfy both prongs of the *Williamson* ripeness test.

The Fifth Amendment guarantees that no one will "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. These constitutional protections are applicable to the states through the Fourteenth Amendment. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617, 121 S. Ct. 2448, 2457, 150 L. Ed. 2d 592 (2001) ("The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." (internal citations omitted)); *see, e.g.*, *Weaver v. Brenner*, 40 F.3d 527, 534 (2d Cir. 1994).

The Takings Clause applies to situations where the government occupies land or otherwise encroaches on a plaintiff's land or attempts to enforce a regulation that simply goes "too far." *Palazzolo*, 533 U.S. at 617. A successful claim must allege (1) a valid property interest; (2) that

the plaintiff's property interest was taken under the color of state law; and (3) that (2) was done so without just compensation. *See, e.g.*, *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992).

As previously stated, the first prong of the *Williamson* test requires a plaintiff to demonstrate that "(1) the state regulatory entity has rendered a 'final decision' on the matter." *Sherman*, 752 F.3d at 561 (quoting *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). This certifies that, when the Court reviews a § 1983 claim challenging the constitutionality of a local land use regulation, it has "the benefit of a fully developed record, a precise demonstration of how local regulations would be applied to the particular property, and knowledge of whether a variance or approval of alternative plans could provide the relief the landowner seeks." *Lawson v. E. Hampton Planning and Zoning Comm'n*, No. 07-cv-1270, 2008 WL 4371297, at *3 (D. Conn. Sept. 22, 2008) (citing *Murphy*, 402 F.3d at 348); *accord Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 122 (2d Cir. 2014) (explaining that the purpose of the final decision requirement is to separate "those cases in which a plaintiff has suffered a 'concrete and particularized,' 'actual or imminent' injury, and those in which the injury is 'merely speculative and may never occur, depending on the final administrative resolution'" (internal citations omitted)).

Without a "definitive position on the issue that inflicts an actual, concrete injury," *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003) (quoting *Williamson*, 473 U.S. at 193). *aff'd sub nom.*, *R-Goshen LLC v. Andrews*, 115 F. App'x 465 (2d Cir. 2004), the Plaintiffs have not received a "final decision." *See Honess 52 Corp. v. Town of Fishkill*, 1 F. Supp. 2d 294, 301 (S.D.N.Y. 1998) ("[The] court cannot determine whether a plaintiff has been deprived of property, arbitrarily or otherwise, until it has a final decision before it." (internal citations omitted)).

It is manifestly clear that the Plaintiffs have not yet received a final decision by the Defendants on the enforcement of the County's sewage regulations. On the contrary, the record reflects that the Plaintiffs received a Notice of Formal Hearing on or about June 26, 2017 notifying them that on July 28, 2017, they were directed to appear before DHS "to respond to the charge(s) made by Suffolk County Department of Health Services that the [Plaintiffs] violated Article 7 of the Suffolk County Sanitary Code at the Calverton Hills [sewage treatment plant]." Stern Declaration, DE 11, Exhibit F. The Plaintiffs filed their complaint with this Court on June 30, 2017, approximately one month before the DHS hearing pertaining to the regulatory charges that are the subject of this action. Until the Defendants have reached final, definitive positions regarding their interpretations of the sewage treatment plant's compliance with the current regulations, the Plaintiffs' takings claim for the taking of their property without just compensation cannot be ripe.

The Plaintiffs have not alleged that appealing the enforcement of the regulations would be futile nor have they argued that the DHS hearing "sits purely as a remedial body [that is] empowered at most to review a rejection, not to participate in the decision making." *Murphy*, 402 F.3d at 349 (quoting *Williamson*, 473 U.S. at 193). Even if the Plaintiffs had alleged futility, such a claim would fail. Although the Defendants have levied numerous onerous actions on the Plaintiffs, the Court has not been presented with enough information to find that a "federal lawsuit at this stage would inhibit the kind of give-and-take negotiation that often resolves land use problems, and would in that way impair or truncate a process that must be allowed to run its course." *Sunrise Detox*, 769 F.3d at 124. Furthermore, if the Plaintiffs believe that the Defendants are refusing to provide a "final decision," a claim they have not alleged, they "could and should have brought an Article 78 proceeding in state court to force the [Defendants] to make a decision."

*R-Goshen LLC*, 289 F. Supp. 2d at 449.  Rather than following the appropriate administrative process to obtain a "final decision" from the administrative agency at issue, the Plaintiffs chose to leapfrog the DHS hearing and bring this claim to federal court.  *Williamson* prevents such action. Without a final decision from DHS, "the Court's assessment of plaintiff's injury caused by defendants' alleged constitutional violations is speculative for Article III purposes." *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 150 (E.D.N.Y. 2006).  The Plaintiffs' takings claim is therefore not ripe because they failed to appeal DHS's enforcement action.

Although the Plaintiffs conclusory assert that "[t]he actions of the defendants have left Plaintiffs with no administrative remedy," such a proclamation does not save their claim.  *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209 (1986) ("Although for the purposes of [a] motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." (internal citations omitted)); *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 400-01 n.3 (2d Cir. 1994) (2d Cir. 1994) ("[C]onclusory allegations of the legal status of a defendant's acts need not be accepted as true for purposes of ruling on a motion to dismiss.").

The second prong of the *Williamson* test stipulates that "the plaintiff has sought just compensation by means of an available state procedure."  *Sherman*, 752 F.3d at 561 (quoting *Dougherty*, 282 F.3d at 88).  If the Plaintiffs fail to allege that the state denied compensation after

following the appropriate state procedures, such a claim cannot withstand a motion to dismiss. *New Holland Vill. Condo. v. DeStaso Enters. Ltd.*, 139 F. Supp. 2d 499, 504 (S.D.N.Y. 2001) ("[T]o withstand a motion to dismiss, an aggrieved plaintiff must allege, not only a taking, but that compensation was sought via state procedures and was denied." (citing *Williamson*, 471 U.S. at 195)), *aff'd sub nom.*, *New Holland Vill. v. Destaso Enters. Ltd.*, 29 F. App'x 760 (2d Cir. 2002). "Courts within the Second Circuit have uniformly dismissed Fifth Amendment takings claims at the pleadings stage when plaintiffs fail to sufficiently allege that they have availed themselves of such state procedures." *Viteritti v. Inc. Vill. of Bayville*, 831 F. Supp. 2d 583, 591 (E.D.N.Y. 2011) (citing *Vandor, Inc. v. Militello*, 301 F.3d 37, 38-39 (2d Cir. 2002)). The language of the Takings Clause explains the remedy, U.S. Const. amend. V. ("…nor shall private property be taken for public use, without just compensation."). No constitutional violation can occur until that remedy, just compensation, has been denied.

In the instant case, the Plaintiffs have failed to plead that they have fruitlessly utilized New York's state procedures for obtaining just compensation for the alleged taking of the property. *See Williamson*, 473 U.S. at 195. New York Federal District Courts in the Second Circuit have upheld that numerous procedures are sufficient to satisfy the second prong of the *Williamson* test, including (1) the procedures set forth in New York's Eminent Domain Procedure Law; and (2) commencing an action under Article I, Section 7 of the New York State Constitution. *Melrose Credit Union v. City of New York*, 247 F. Supp. 3d 356, 370-71 (S.D.N.Y. 2017) (holding that courts in the Second Circuit have uniformly held that Article I, Section 7 satisfied the second prong of *Williamson*) (collecting cases); *see, e.g.*, *Vaizburd v. United States*, 90 F. Supp. 2d 210 (E.D.N.Y. 2000).

The Plaintiffs have not alleged that they followed any New York State procedure, nor have they represented to the Court that efforts have been made to obtain compensation in the New York State court system. This constitutes a failure to avail themselves of New York's procedures to obtain just compensation for the alleged taking.

The Plaintiffs allege that the Defendants' efforts to enforce the "newly Amended Health Department Regulations," Complaint ¶¶ 108-114, constitute a regulatory taking and that these claims are not subject to the *Williamson* test. The Second Circuit has explicitly rejected the Plaintiffs' theory, holding that "*Williamson* drew no distinction between physical and regulatory takings." *Villager Pond, Inc.*, 56 F.3d at 380; *see also Kurtz*, 758 F.3d at 513 ("*Williamson County* applies to regulatory and physical takings alike."). Regardless of whether this amounts to a physical taking, regulatory taking, or some combination of the two, the Plaintiffs must satisfy the *Williamson* test.

The Plaintiffs further attempt to confound the issue by noting that they were not required to institute an Article 78 proceeding before bringing constitutional claims under 42 U.S.C. § 1983 in federal court. This amounts to an attempt to circumvent the *ripeness* pleading requirement with an argument on *exhaustion*. Justice Blackmun, in his majority opinion in *Williamson* explained the difference between *ripeness* and *exhaustion*:

> Respondent asserts that it should not be required to seek variances from the regulations because its suit is predicated upon 42 U.S.C. § 1983, and there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action. The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable. … While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful

or otherwise inappropriate. … The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. ... If the government has provided an adequate process for obtaining compensation, and if resort to that process yields just compensation, then the property owner has no claim against the Government for a taking.

473 U.S. at 192-95 (internal citations omitted).  Thus, ripeness, not exhaustion is the relevant inquiry and the Plaintiffs, in their failure to attempt to secure compensation through state procedures have not suffered a takings violation.

The Plaintiffs fail to satisfy the second prong of the *Williamson* ripeness test as they fail to plead that they have availed themselves of New York's settled procedures for receiving compensation for a taking.  Accordingly, this Court lacks subject matter jurisdiction over the Plaintiffs' Takings Clause claim.

### b.  Equal Protection Claim

The Plaintiffs also allege that the "mandates of the Suffolk County Sanitary Code, as applied, violate Plaintiffs' right to equal protection of the law," under the Fourteenth Amendment of the United States Constitution.  Complaint ¶ 147.  Specifically, the Plaintiffs claim that they "were treated differently than all other property owners who are benefitted by a County owned and/or operated sewage treatment plant and are not forced to operate, maintain or replace same at their own cost and expense."  *Id*. ¶ 140.  It is common for property owners to allege violations of the Equal Protection Clause in addition to the Takings Clause of the Fifth Amendment in land-use cases.  *See generally Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1540 (11th Cir. 1991), *cert. denied*, 112 S. Ct. 55 (1991).

The Plaintiffs' equal protection claim arises out of the same factual circumstances as their takings claim.  As described in detail in Section II.A.2.a., the Plaintiffs failed to successfully allege either prong of the dual-pronged *Williamson* test.  "[In the Second Circuit, t]he ripeness

requirement of *Williamson*, although announced in a takings context, has been extended to equal protection … claims in the context of land use challenges." *Dougherty*, 282 F.3d at 88-89; *accord Country View Estates @ Ridge LLC*, 451 F. Supp. 2d at 148-50 (noting that the *Williamson* ripeness test applied to equal protection claims); *see also Goldfine*, 80 F. Supp. 2d at 158; *Kinzli v. City of Santa Cruz*, 818 F.2d 1449 (9th Cir. 1987), *amended*, 830 F.2d 968 (9th Cir. 1987). *cert. denied*, 108 S. Ct. 775 (1988). Therefore, this Court also lacks subject matter jurisdiction over the Plaintiffs' equal protection claim.

### c. Due Process Claim

The Plaintiffs' final federal claim at-issue alleges substantive due process violations, specifically that "[t]he actions by the municipal defendants in requiring the Plaintiffs to replace the [sewage treatment plant] and to incur all the costs and expenses associated with such replacement in violation of the [1973] Agreement, is so oppressive, irrational, arbitrary and capricious as to constitute a deprivation of substantive due process under the Fourteenth Amendment to the United States Constitution." Complaint ¶ 128.

The Due Process Clause of the Fourteenth Amendment provides that "no State shall … deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. Although the Plaintiffs plead due process violations in Counts 3 and 4 of the Complaint, both counts are based on the same operative facts; allege the same injuries; and are premised on the same constitutional violation. Given these reasons, the Court holds that these Counts are identical for the purposes of this motion.

In the Second Circuit, the *Williamson* ripeness test applies to land use disputes challenged using substantive due process claims. *See Dougherty*, 282 F.3d at 88-89; *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 96-97 (2d Cir. 1992). However, substantive due process claims that are

21

based on alleged arbitrary and capricious conduct only requires the second prong of the *Williamson* ripeness test. *See id*. at 96-97.

In the instant case, the Plaintiffs' takings claim arises out of the same factual circumstances as the substantive due process claim. The alleged harm pled in both claims results from the same actions of the Defendants. *See, e.g.*, *Osborne v. Fernandez*, No. 06-cv-4127, 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009). As explained above, the Plaintiffs fail to successfully allege either prong of the *Williamson* test. Therefore, this Court also lacks subject matter jurisdiction over the Plaintiffs' substantive due process claim.

## B. FAILURE TO STATE A CLAIM

### 1. Legal Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

### 2. Fourth Amendment Claim

As discussed in Section II.A.2, this Court lacks subject matter jurisdiction over three of the Plaintiffs' § 1983 claims. The sole federal cause of action under § 1983 remaining is an obscure reference to the Fourth Amendment to the United States Constitution in the claim that also pleads a violation of the Fifth and Fourteenth Amendments. The Fourth Amendment provides, in pertinent part that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. However, the Plaintiffs' complaint makes no allegation that the Defendants conducted an

unreasonable search or seizure.  Therefore, the Plaintiffs fail to successfully plead a Fourth Amendment claim.

### 3. State Law Claims

As this Court has determined that it lacks subject matter jurisdiction over three of the four federal claims and that the Plaintiffs have failed to state a claim for the final federal claim, the Court declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims.  *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction …"); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991).

## III.  CONCLUSION

For the foregoing reasons, the Court denies the Plaintiffs' motion for a preliminary injunction.  Further, the Court dismisses the Plaintiffs' § 1983 claims with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6).  Accordingly, the state law claims are dismissed without prejudice. The Clerk of the Court is respectfully directed to close the case.


It is **SO ORDERED**:

Dated: Central Islip, New York

December 26, 2017


___*/s/ Arthur D. Spatt*___

ARTHUR D. SPATT

United States District Judge

24